Slip Op. 12- 85

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **THE BARDEN CORPORATION**, | |
| Plaintiff, | |
| v. | |
| **UNITED STATES OF AMERICA, UNITED STATES CUSTOMS AND BORDER PROTECTION, W. RALPH BASHAM (COMMISSIONER, UNITED STATES CUSTOMS AND BORDER PROTECTION), UNITED STATES INTERNATIONAL TRADE COMMISSION and DANIEL R. PEARSON (CHAIRMAN, UNITED STATES INTERNATIONAL TRADE COMMISSION)**, | Before: Gregory W. Carman, Judge<br>Timothy C. Stanceu, Judge<br>Leo M. Gordon, Judge |
| Defendants, | Consol. Court No. 06-00435 |
| and | |
| **THE TIMKEN COMPANY and MPB CORP.**, | |
| Defendant-Intervenors. | |

## OPINION AND ORDER

[Dismissing certain claims and ordering filing of the administrative record and a draft scheduling order for further proceedings]

Dated: June 15, 2012

*Max F. Schutzman* and *Andrew T. Schutz*, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of New York, NY, for plaintiff.

*David S. Silverbrand* and *Courtney S. McNamara*, Trial Attorneys, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant

United States.  With them on the briefs were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White, Jr.*, Assistant Director.

    *Patrick V. Gallagher, Jr.*, Attorney Advisor, Office of the General Counsel, U.S. International Trade Commission, of Washington, DC, for defendant U.S. International Trade Commission.  With him on the briefs were *James M. Lyons*, General Counsel, and *Neal J. Reynolds*, Assistant General Counsel.

    *Geert M. De Prest*, *Terence P. Stewart*, *Amy S. Dwyer*, and *Patrick J. McDonough*, Stewart and Stewart, of Washington, DC, for defendant-intervenors.

    Stanceu, Judge: Plaintiff, The Barden Corporation ("Barden"), a domestic producer of antifriction bearings ("AFBs"), initiated five actions (now consolidated) against the United States asserting constitutional challenges to the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA" or "Byrd Amendment"), Pub. L. No. 106-387, §§ 1001-03, 114 Stat. 1549, 1549A-72-75, 19 U.S.C. § 1675c (2000),[1] *repealed by* Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601(a), 120 Stat. 4, 154 (Feb. 8, 2006; effective Oct. 1, 2007).[2]  Barden claims entitlement to a share of CDSOA distributions of duties assessed on various antidumping duty orders on imported AFBs, having been denied eligibility for those distributions by decisions of the U.S. International Trade Commission (the "ITC" or the "Commission") and U.S. Customs

---

[1] Citations are to 19 U.S.C. § 1675c (2000).  All other citations to the United States Code are to the 2006 edition.

[2] Congress repealed the CDSOA in 2006, but the repealing legislation provided that "[a]ll duties on entries of goods made and filed before October 1, 2007, that would [but for the legislation repealing the CDSOA], be distributed under [the CDSOA] . . . shall be distributed as if [the CDSOA] . . . had not been repealed . . . ."  Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601(a), 120 Stat. 4, 154 (Feb. 8, 2006; effective Oct. 1, 2007).  In 2010, Congress further limited CDSOA distributions by prohibiting payments with respect to entries of goods that as of December 8, 2010 were "(1) unliquidated; and (2)(A) not in litigation; or (B) not under an order of liquidation from the Department of Commerce."  Claims Resolution Act of 2010, Pub. L. No. 111-291, § 822, 124 Stat. 3064, 3163 (2010).

and Border Protection ("Customs" or "CBP").  Barden seeks disbursements for Federal Fiscal Years 2004 through 2009.

For Fiscal Years 2004 through 2006, the ITC did not recognize Barden as potentially eligible for "affected domestic producer" ("ADP") status with respect to the AFBs orders.  ADP status is necessary under the CDSOA to qualify a domestic producer for a share of distributed antidumping duties.  ADP status is limited by the CDSOA to petitioners and parties who expressed support for the antidumping duty petition.  The ITC denied Barden ADP status for Fiscal Years 2004 through 2006 because Barden did not waive confidentiality for its expression of support for the petition seeking antidumping duties on imported AFBs.  For Fiscal Years 2007 through 2009, Customs denied Barden CDSOA disbursements because Barden had been acquired by a company related to a company that "opposed the investigation" resulting in issuance of the AFBs antidumping duty orders.  Under the CDSOA, a company so acquired is barred from obtaining ADP status.  Barden claims that denying it CDSOA disbursements was contrary to the First Amendment on freedom of expression grounds, contrary to the Fifth Amendment on equal protection grounds and, due to what it views as a retroactive aspect of the CDSOA, also contrary to the Fifth Amendment on due process grounds.

Before the court are motions to dismiss and motions for judgment on the pleadings by Customs, the ITC, and defendant-intervenors, The Timken Company and MPB Corporation (collectively, "Timken").[3]  Also before the court is Barden's motion for a judgment on the pleadings.  The court determines that plaintiff's claims seeking a CDSOA disbursement for

---

[3] Both defendants and the defendant-intervenors filed answers in Court No. 06-00435. Only defendant-intervenors filed answers in the other four cases.

Fiscal Year 2004 are time-barred to the extent that they challenge the ITC's omission of Barden from the list of potential ADPs. We conclude, further, that we must dismiss plaintiff's remaining claims as to Fiscal Year 2004 and all of plaintiff's claims seeking disbursements for Fiscal Years 2005 and 2006, on which Barden cannot obtain relief. We deny all motions seeking dismissal of Barden's claims pertaining to Fiscal Years 2007 through 2009. We also deny Barden's motion for judgment on the pleadings.

## I. BACKGROUND

Barden commenced an action on November 28, 2006, seeking CDSOA disbursements for Fiscal Years 2004 and 2005. Compl. (Nov. 28, 2006), ECF No. 4. On February 23, 2007, the court stayed this action "until final resolution of *Pat Huval Restaurant & Oyster Bar, Inc. v. United States International Trade Commission*, Consol. Court No. 06-00290, that is, when all appeals have been exhausted." Order (Feb. 23, 2007), ECF No. 23. Subsequently, Barden brought a separate action seeking a disbursement for Fiscal Year 2006. Compl. (Feb. 26, 2007), ECF No. 2 (Court No. 07-00063) ("Compl. 07-63"). Barden later commenced three separate actions seeking disbursements for Fiscal Years 2007, 2008, and 2009, which the court consolidated under Court No. 06-00435. Order (Feb. 15, 2011), ECF No. 37.

Following the decision of the U.S. Court of Appeals for the Federal Circuit ("Court of Appeals") in *SKF USA, Inc. v. United States*, 556 F.3d 1337 (Fed. Cir. 2009) ("*SKF*"), *cert. denied*, 130 S. Ct. 3273 (2010), which addressed certain legal questions similar to those present in this case, the court ordered plaintiff to show cause why this case should not be dismissed. Order (Jan. 3, 2011), ECF No. 31. After plaintiff responded, the court lifted the stay for all purposes. Order (Feb. 9, 2011), ECF No. 34.

## II. DISCUSSION

The court exercises subject matter jurisdiction pursuant to section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(i)(4), which grants the Court of International Trade exclusive jurisdiction of any civil action commenced against the United States arising out of any law providing for administration with respect to, *inter alia*, "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(2), (4). This action arises out of the CDSOA, which is such a law. *See Furniture Brands Int'l, Inc. v. United States*, 35 CIT __, __, 807 F. Supp. 2d 1301, 1307-10 (2011).

In 2000, Congress enacted the CDSOA, amending the Tariff Act of 1930 to provide annual distributions to ADPs of antidumping and countervailing duties assessed under orders in effect on January 1, 1999 or thereafter, and orders issued after enactment. 19 U.S.C. § 1675c(b), (d)(1). To qualify as an ADP, a party must meet two criteria relevant here. It must have been "a petitioner or interested party in support of the petition with respect to which an antidumping duty order . . . has been entered." *Id.* § 1675c(b)(1)(A) ("petition support requirement"). And it must not have been "acquired by a company or business that is related to a company that opposed the investigation . . . ." *Id.* § 1675c(b)(1) ("acquisition clause").

The CDSOA divides administrative responsibilities between the ITC and Customs. Read in pertinent part, the statute requires the ITC to prepare and transmit to Customs "a list of petitioners . . . with respect to each order . . . and a list of persons that indicate support of the petition by letter or through questionnaire response." *Id.* § 1675c(d)(1). The CDSOA directs that Customs publish in the Federal Register lists of ADPs potentially eligible for disbursements of a "continued dumping and subsidy offset" based on the lists obtained from the Commission

and that Customs request that potentially eligible parties certify eligibility for such a disbursement. *Id.* § 1675c(d)(2). The CDSOA also directs Customs to segregate antidumping and countervailing duties according to the relevant antidumping or countervailing duty order, to maintain these duties in special accounts, and to distribute to companies determined to be ADPs annually, as reimbursement for incurred qualifying expenditures, a ratable share of the funds (including all interest earned) from duties assessed on a specific unfairly traded product that were received in the preceding fiscal year. *Id.* § 1675c(d), (e).

A 1988 antidumping duty petition sought relief from imports of antifriction bearings, other than tapered roller bearings, from France, Germany, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom. During the resulting 1988 ITC injury investigation, Barden expressed its support for the investigation to the ITC. Compl. ¶¶ 10-11. Following an affirmative ITC injury determination, Commerce in 1989 issued antidumping duty orders covering ball bearings and parts thereof from France, Germany, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom; spherical plain bearings and parts thereof from France, Germany, and Japan; and cylindrical roller bearings and parts thereof from France, Germany, Italy, Japan, Sweden, Thailand, and the United Kingdom. *Id.* ¶ 27; *Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, & Spherical Plain Bearings & Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand, & the United Kingdom*, 54 Fed. Reg. 20,900 (May 15, 1989).

Barden states that it was acquired in 1991 by a German company, FAG Kugelfischer George Schaefer KGaA. Compl. ¶ 10. A U.S. affiliate of the acquiring company, FAG Bearings

Consol. Court No. 06-00435                                                                                          Page 7

Corporation ("FAG Bearings"), "opposed the AFBs petition." *Id.* Barden states, further, that the "FAG companies and Barden were later acquired in 2002 by INA-Schaeffler KG, a bearing producer based in Germany, which likewise did not support the original AFBs investigation." *Id.*

Customs published a list of potential ADPs for Fiscal Year 2004 on June 2, 2004 along with a notice of intent to make an annual CDSOA distribution for that year. *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 69 Fed. Reg. 31,162 (June 2, 2004) ("*FY 2004 Notice of Intent*"). Barden did not appear on this list, nor did it appear on the lists Customs published for Fiscal Years 2005 and 2006. *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 70 Fed. Reg. 31,566 (June 1, 2005); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 71 Fed. Reg. 31,336 (June 1, 2006). Barden neither sought nor received CDSOA disbursements for Fiscal Years 2004 through 2006. Compl. ¶ 10; Compl. 07-63 ¶ 10.

The ITC includes on its list of potential ADPs only those parties who have waived confidential treatment for their questionnaire responses on petition support, either during the investigation or subsequently, based on the ITC's interpretation of the confidentiality requirements set forth in section 777 of the Tariff Act, 19 U.S.C. § 1677f(b)(1)(A). *See Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 400 F.3d 1352, 1358-59 (Fed. Cir. 2005).[4] Barden concedes that it did not waive confidentiality regarding its support for the AFBs petition

---

[4] Section 777 of the Tariff Act of 1930 states, in relevant part, that "information submitted to . . . the Commission which is designated as proprietary by the person submitting the information shall not be disclosed to any person without the consent of the person submitting the information . . . ." 19 U.S.C. § 1677f(b)(1)(A).

until 2007.  Pl.'s Resp. in Opp'n to Defs.' & Def.-intervenors' Mots. to Dismiss for Failure to State a Claim & for J. on the Pleadings & in Supp. of its Cross-Mot. for J. on the Pleadings 4 (June 6, 2011), ECF No. 57 ("Pl.'s Resp.").

On May 4, 2007, Barden "filed a request with the ITC to revise its ADP list to include Barden . . . ."  *Id*. at 6.  On May 29, 2007, Customs published the list of potential ADPs for Fiscal Year 2007, and Barden again did not appear on this list.  *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 72 Fed. Reg. 29,582 (May 29, 2007).  On July 30, 2007, Barden nevertheless certified to Customs that it was eligible for a CDSOA disbursement for Fiscal Year 2007.  Compl. ¶ 37 (Oct. 6, 2008), ECF No. 2 (Court No. 08-00350) ("Compl. 08-350") (seeking a disbursement for Fiscal Year 2007).  On August 3, 2007, the ITC added Barden to the list of potential ADPs and informed Customs that Barden was now potentially eligible for CDSOA disbursements.  *Id*. ¶ 32.  In a letter dated January 15, 2008, Customs informed Barden of its determination that Barden was ineligible for a CDSOA disbursement for Fiscal Year 2007 "because Barden appeared to have been acquired by a company that opposed the antidumping duty investigation that, ultimately, led to the imposition of the antidumping orders under which Barden was seeking CDSOA offsets."  *Id*. ¶ 41.

For Fiscal Years 2008 and 2009, Barden appeared on the ITC's list of potential ADPs.  *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 73 Fed. Reg. 31,196 (May 30, 2008); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 74 Fed. Reg. 25,814 (May 29, 2009).  For these fiscal years, Barden certified its eligibility for a CDSOA disbursement.  Compl. ¶ 37 (Nov. 3, 2008), ECF No. 5 (Court No. 08-00389) ("Compl. 08-389") (seeking a disbursement for Fiscal Year 2008); Compl.

¶ 37 (Feb. 17, 2010), ECF No. 2 (Court No. 10-00050) ("Compl. 10-50") (seeking a disbursement for Fiscal Year 2009).  Customs denied Barden disbursements for these two fiscal years "because Barden was acquired by a company that opposed the antidumping duty investigations . . . ."  Compl. 08-389 ¶ 38; Compl. 10-50 ¶ 38.

Barden challenges, on three constitutional principles, the actions by Customs and the ITC denying it CDSOA disbursements.  Citing First Amendment freedom of expression guarantees, Barden claims that "[d]efendants' application of [the CDSOA] conditioning receipt of a government benefit upon a private speaker's expression of a particular viewpoint (*e.g.*, Barden's affiliated company expressing support for a petition), constitutes viewpoint discrimination in violation of the First Amendment."  Compl. ¶ 43.  Citing the Fifth Amendment equal protection doctrine, Barden alleges that it was "in all relevant respects similarly situated to those domestic producers that Defendants deemed eligible to receive disbursements of CSDOA funds" and that it was denied CDSOA disbursements "merely due to its affiliation with a company that did not support the original AFBs investigation," which, according to Barden, "violates the company's Equal Protection rights . . . ."  *Id.* ¶ 47.  Citing the Fifth Amendment due process doctrine disfavoring retroactive legislation, Barden alleges that "Defendants have based Barden's eligibility for CDSOA disbursements on past conduct" and that doing so violates the Fifth Amendment because "the retroactive aspect of this eligibility determination is not rationally related to a legitimate government purpose[.]"  *Id.* ¶ 50.

Below, we address the various claims as stated in the five complaints in this consolidated action.  Before granting a motion to dismiss brought under USCIT Rule 12(b)(5), we must determine that the complaint does not "contain sufficient factual matter, accepted as true, to

Consol. Court No. 06-00435                                                                                   Page 10

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### A.  All of Plaintiff's Claims Seeking CDSOA Benefits for Fiscal Year 2004 Must Be Dismissed

As we discussed above, Barden raises in this consolidated action constitutional challenges to the CDSOA as applied to it by the ITC and by Customs, for Fiscal Years 2004 through 2009.  We conclude that all of Barden's claims seeking a CDSOA disbursement for Fiscal Year 2004 must be dismissed.

### 1.  Plaintiff's Claims Challenging the Commission's Omitting Barden from the List of Potential ADPs for Fiscal Year 2004 Are Time-Barred

As provided in section 301 of the Customs Courts Act of 1980, any claim brought under the jurisdictional grant of 28 U.S.C. § 1581(i) is time-barred "unless commenced in accordance with the rules of the court within two years after the cause of action first accrues."  28 U.S.C. § 2636(i).  Barden alleges that its claims seeking a Fiscal Year 2004 disbursement are timely because its "causes of action accrued no earlier than November 30, 2004, the date by which Customs must have completed the distributions of fiscal year 2004 CDSOA disbursements as provided for under 19 U.S.C. § 1675c(c)."  Compl. ¶ 18.

Because Barden commenced the action seeking a Fiscal Year 2004 CDSOA disbursement on November 28, 2006, its claims with respect to Fiscal Year 2004 are barred by the statute of limitations unless they accrued on or after November 28, 2004.  Barden asserts claims challenging, on various grounds, the ITC's omission of Barden from the list of potential ADPs for Fiscal Year 2004, but these claims accrued on June 2, 2004, the date that Customs published the notice of intent to distribute CDSOA disbursements for Fiscal Year 2004 based on the list of potential ADPs as determined by the Commission–a list that did not include Barden.

*FY 2004 Notice of Intent*. A claim first accrues at the time that a suit could have been brought, and in this instance plaintiff could have contested the Commission's determination on the date the notice was published. *See SKF*, 556 F.3d at 1348; *Pat Huval Restaurant & Oyster Bar, Inc. v. United States*, 36 CIT __, __, 823 F. Supp. 2d 1365, 1373-75 (2012); *Tampa Bay Fisheries, Inc. v. United States*, 36 CIT __, __, 825 F. Supp. 2d 1331, 1339-40 (2012).

      As it does for the later fiscal years at issue in its case, Barden asserts claims with respect to the Fiscal Year 2004 CDSOA distribution that challenge both the petition support requirement and the acquisition clause. Compl. ¶¶ 41-50. With respect to the former, Barden claims, specifically, that the petition support requirement denied Barden its First Amendment rights and the equal protection of the laws and, further, is impermissibly retroactive, in violation of Barden's due process rights. Because the petition support requirement was applied to Barden by the Commission, and not by Customs, all of Barden's claims arising out of the ITC's identification of potential ADPs for Fiscal Year 2004 are time-barred.

  2. <u>Plaintiff's Remaining Claims Pertaining to Fiscal Year 2004 Must Be Dismissed for Failure to State a Claim on which Relief Can Be Granted</u>

      For Fiscal Year 2004, Barden also brings claims challenging on constitutional grounds its exclusion by Customs from the Fiscal Year 2004 distribution. Compl. ¶¶ 41-50. Because the denial of a Fiscal Year 2004 disbursement to Barden was not a final action until November 30, 2004, the date by which the statute required Customs to complete a distribution, and Barden filed the complaint in Court No. 06-00435 less than two years later, on November 28, 2006, these claims are not time-barred. However, no relief is available on these claims. Due to its omission from the ITC's list, Barden lacked a prerequisite under 19 U.S.C. § 1675c(d)(1) to apply for a Fiscal Year 2004 disbursement. Barden's absence from the ITC's list, all challenges to which

Consol. Court No. 06-00435                                                                                    Page 12

are untimely, was sufficient to prevent Barden from participating in the Fiscal Year 2004 distribution, regardless of any subsequent action or inaction by Customs. *See* 19 U.S.C. § 1675c(d)(2) (confining the distribution for a particular Fiscal Year to "affected domestic producers potentially eligible for the distribution based on the list obtained from the Commission under [§ 1675c(d)(1)]"). As a result, plaintiff would be unable to obtain a remedy pertaining to the Fiscal Year 2004 distribution even were it ultimately successful in challenging on constitutional grounds a provision of the CDSOA other than the petition support requirement. Although plaintiff also challenges the acquisition clause of the CDSOA, plaintiff would not qualify for a Fiscal Year 2004 disbursement even if the acquisition clause were severed from the statute. Therefore, we must dismiss, for failure to state a claim on which relief can be granted, the remaining claims seeking a disbursement for Fiscal Year 2004.

B.  All Claims Seeking Disbursements for Fiscal Years 2005 and 2006 Must Be Dismissed for Failure to State a Claim on which Relief Can Be Granted

We determine that plaintiff's claims seeking CDSOA disbursements for Fiscal Years 2005 and 2006 also must be dismissed for failure to state a claim on which relief can be granted.

Customs includes in its notices of intention to distribute a CDSOA offset only those parties who appear on the ITC's list of potential ADPs. 19 U.S.C. § 1675c(d)(1), (2). For a non-petitioner such as Barden, appearing on the Commission's ADP list requires that the party have indicated "support of the petition by letter or through questionnaire response." *Id*. § 1675c(d)(1). The ITC requires that a party waive confidentiality for its support of a petition in order to be included on the ITC's list of potential ADPs ("public disclosure requirement"), a requirement that has been upheld upon judicial review. *Cathedral Candle Co.*, 400 F.3d

at 1358-59 (affirming the Commission's construction of the CDSOA to require public expression of support for a petition).

In support of its claims seeking CDSOA disbursements, Barden alleges that it expressed support for the AFBs petition, *e.g.*, Compl. ¶ 10, but concedes that it did not express "public" support for the petition. For this reason, Barden was not included on the ITC's list "of AD and CVD orders in effect on January 1, 1999 and the petitioners and supporting interested parties in each." Pl.'s Resp. 4. Plaintiff concedes not only that Barden was omitted from the Commission's list of potential ADPs as published for Fiscal Years 2004, 2005, and 2006, but also that Barden did not ask to be added to those versions of the list "as its request would unquestionably have been denied due to the unconstitutional requirements imposed by the Commission." Compl. ¶ 11; Compl. 07-63 ¶ 11. Barden acknowledges that it was not added to the Commission's list until 2007. "On August 3, 2007, the Commission added Barden to its list of affected domestic producers" and "transmitted a letter to Customs confirming that Barden had been added to the list of potentially eligible domestic producers." Compl. 08-350 ¶ 32; Compl. 08-389 ¶ 32; Compl. 10-50 ¶ 32. Barden explains in its response to the motions to dismiss that the Commission's addition of Barden to the list "required Barden to waive proprietary treatment of its support for the petition." Pl.'s Resp. 6.

On the facts alleged, no relief is available on plaintiff's claims for CDSOA disbursements for Fiscal Years 2005 and 2006. Barden does not allege that it waived proprietary treatment for its expression of support for the petition for any CDSOA distribution prior to the distribution for Fiscal Year 2007. To the contrary, Barden admits that it did not ask the ITC to add it to the list of potential ADPs for Fiscal Years 2004, 2005, or 2006. Compl. ¶ 11; Compl. 07-63 ¶ 11.

**Consol. Court No. 06-00435**                                                                                             Page 14

   Barden's failure to meet the ITC's public disclosure requirement would not foreclose relief on these claims if Barden could establish the constitutional infirmity of the petition support requirement, on which the Commission's public disclosure requirement is based. However, we must reject Barden's constitutional challenges to the petition support requirement according to the binding precedent of *SKF*, 556 F.3d at 1359-60, in which the Court of Appeals held that the petition support requirement was not unconstitutional on First Amendment or equal protection grounds. The First Amendment and equal protection claims challenging the petition support requirement that Barden asserts in this case are not materially distinguishable from those rejected by the Court of Appeals in *SKF*. Plaintiff argues that the court must "revisit" the holding and reasoning of *SKF* based on the decisions of the Supreme Court in *Citizens United v. Federal Election Commission*, 130 S. Ct. 876 (2010), and *Snyder v. Phelps*, 131 S. Ct. 1207 (2011). Pl.'s Resp. 19-25. Those cases, which dealt with restrictions on electioneering speech and state-law tort claims, respectively, do not implicitly overturn *SKF* and do not allow the court to disregard this binding precedent. *See*, *e.g.*, *Ethan Allen Global, Inc. v. United States*, 36 CIT __, __, 816 F. Supp. 2d 1330, 1338-39 (2012).

   Barden also claims that the petition support requirement violates due process because of retroactivity. Barden is correct in characterizing the petition support requirement as "retroactive." Congress applied the requirement such that a party's ability to be an ADP depends in some instances, as it does here, on a party's having expressed support for an antidumping or countervailing duty petition during an investigation that took place prior to enactment of the CDSOA. 19 U.S.C. § 1675c(d)(1). But as we held in *New Hampshire Ball Bearing, Inc. v. United States*, 36 CIT __, __, 815 F. Supp. 2d 1301, 1306-10 (2012), the petition support

Consol. Court No. 06-00435                                                                                  Page 15

requirement is not impermissibly retroactive.  We conclude, as we did in that case, that "the retroactive application of the legislation is itself justified by a rational legislative purpose" and, therefore, permissible on due process grounds.  *Id.* at __, 815 F. Supp. 2d at 1307 (quoting *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 730 (1984)).  As we recognized in *New Hampshire Ball Bearing*, the retroactive application of the petition support requirement served a rational legislative purpose of more fully effectuating a basic purpose of the CDSOA, which was to reward domestic producers who, by supporting antidumping duty petitions in administrative proceedings, aided the government in affording a remedy for the presence in the U.S. market of unfairly traded imports.  *Id.* at __, 815 F. Supp. 2d at 1307.

We construe Barden's challenges to the CDSOA on First Amendment and the Fifth Amendment equal protection grounds as an attack on the CDSOA's acquisition clause as well as the petition support requirement.  But even were we to presume, *arguendo*, that Barden will demonstrate that the acquisition clause is unconstitutional, Barden still could not obtain a CDSOA disbursement for any fiscal year prior to Fiscal Year 2007, due to the preclusive effect of the Commission's requirement that a party's support for a petition be disclosed to the public.  As discussed above, Barden admits facts demonstrating that it did not meet the public disclosure requirement with respect to the Fiscal Year 2005 and Fiscal Year 2006 distributions (and with respect to the Fiscal Year 2004 distribution as well).  Moreover, the public disclosure requirement, which has been upheld by the Court of Appeals, is not challenged in this litigation.  For these reasons, we must dismiss all of plaintiff's claims seeking CDSOA disbursements for Fiscal Years 2005 and 2006 for failure to state a claim on which relief can be granted.[5]

---

[5] We would also dismiss the Fiscal Year 2004 claims on the grounds discussed in this
(continued...)

C.  The Motions to Dismiss Will Be Denied as to Plaintiff's Claims Seeking CDSOA
Disbursements for Fiscal Years 2007, 2008, and 2009

The ITC, Customs, and defendant-intervenors argue that Barden's claims under the First Amendment and equal protection guarantee must be dismissed as foreclosed by the binding precedent of *SKF*.  Def., U.S. Customs & Border Protection's, Mot. to Dismiss for Failure to State a Claim upon which Relief Can Be Granted & for J. on the Pleadings 9-15 (May 2, 2011), ECF No. 54 ("Customs' Mem."); Def. U.S. Int'l Trade Comm'n's Mem. in Supp. of its Mot. to Dismiss for Failure to State a Claim & for J. on the Pleadings 9-14 (May 2, 2011), ECF No. 53 ("ITC's Mem."); Def.-Intervenors' Mem. in Supp. of their Mot. for J. on the Pleadings With Respect to Barden's Compls. 3-7 (May 2, 2011), ECF No. 55 ("Def.-intervenors' Mem.").  In *SKF*, the Court of Appeals addressed claims by SKF USA, Inc. ("SKF USA") alleging that the petition support requirement violated the First Amendment and the Fifth Amendment equal protection guarantee by denying CDSOA disbursements to domestic producers, such as SKF USA, that opposed the petition.  556 F.3d at 1359-60.  *SKF* held that the petition support requirement did not violate First Amendment or equal protection guarantees in rewarding only those interested parties who indicated support of a petition.  *Id.*

In arguing that *SKF* precludes relief on Barden's First Amendment and equal protection claims, defendants and defendant-intervenors appear to overlook the point that the acquisition clause was not at issue in *SKF*.  Barden alleges that Customs denied Barden CDSOA disbursements for Fiscal Years 2007, 2008, and 2009 by applying the acquisition clause, not the petition support requirement.  *See*, *e.g.*, Compl. 08-350 ¶ 41 (alleging that Barden was denied

---

[5](...continued)
section had we not dismissed them for the reasons discussed *supra*.

**Consol. Court No. 06-00435** Page 17

CDSOA disbursements by Customs because it had been acquired by a party related to a party that opposed the investigation). With respect to those fiscal years, the Commission determined that Barden had satisfied the petition support requirement and thereby was entitled to placement on the Commission's list of potential ADPs. *See*, *e.g.*, *id.* ¶ 32.

Because the acquisition clause has not been subjected to judicial challenge on constitutional grounds, either in *SKF* or in any other case, the questions of whether the acquisition clause is permissible under the First Amendment and whether that clause is permissible under the equal protection guarantee remain matters of first impression. We decline to decide these constitutional questions at the pleading stage of this case, before we have had the opportunity to consider the administrative record. To take but one example, the factual background surrounding the manner and context in which the affiliate of Barden's acquirer, FAG Bearings, opposed the investigation may affect a First Amendment analysis of the acquisition clause as applied in this case. The same consideration causes us to decline to rule, at this stage of the proceedings, on the questions of whether the acquisition clause was applied retroactively to Barden and, if so, whether it was so applied consistent with the CDSOA and consistent with principles of due process. Therefore, we do not address at this time the arguments of Customs and defendant-intervenors that the CDSOA is not retroactive and that, even if it were, it would not be impermissibly so. Customs' Mem. 15-20; Def.-intervenors' Mem. 7-11. For the same reason, we also decline to dismiss Barden's retroactivity claims according to the Commission's argument that Barden's due process retroactivity claims should be dismissed as foreclosed by the reasoning in *SKF*, which the ITC characterizes as addressing "whether the petition support requirement was rationally related to a legitimate government interest, which is the standard

applied by the Courts when assessing whether legislation is improperly 'retroactive' under the Due Process Clause." ITC's Mem. 13-14.

In support of their motions, Customs and defendant-intervenors also cite the decision of the Court of Appeals in *Candle Corp. of America v. United States*, 374 F.3d 1087 (Fed. Cir. 2004). Customs' Mem. 14; Def-intervenors' Mem. 6. That case does not address the constitutional questions posed by Barden's challenges to the acquisition clause of the CDSOA. Rather, *Candle Corp. of America* resolved, based on an ascertainment of congressional purpose, a question of statutory construction posed by certain language in the acquisition clause. 374 F.3d at 1094.

For the above-stated reasons, we deny all motions pursuing dismissal of plaintiff's claims seeking CDSOA disbursements for Fiscal Years 2007, 2008, and 2009.

### D.  We Will Deny Plaintiff's Motion for Judgment on the Pleadings

Granting of a motion for judgment on the pleadings in favor of a plaintiff requires that there be no material facts in dispute and that the plaintiff be entitled to judgment as a matter of law. *New Zealand Lamb Co. v. United States*, 40 F.3d 377, 380 (Fed. Cir. 1994). As we discussed above, we decline to rule on the constitutional claims in this case directed to the acquisition clause of the CDSOA, and how that clause was applied to Barden for Fiscal Years 2007, 2008, and 2009, before considering the administrative record. Accordingly, we will deny plaintiff's motion for judgment on the pleadings.

### III.  CONCLUSION AND ORDER

Plaintiff's claims challenging the application of the petition support requirement by the ITC for Fiscal Year 2004 must be dismissed as time-barred. Plaintiff's remaining claims seeking

a Fiscal Year 2004 CDSOA disbursement, and all of plaintiff's claims seeking disbursements for Fiscal Years 2005 and 2006, must be dismissed for failure to state a claim on which relief can be granted. We deny all motions for dismissal or judgment on Barden's claims seeking CDSOA benefits for Fiscal Years 2007, 2008, and 2009.

Upon review of the motions to dismiss and motions for judgment on the pleadings filed in this consolidated action, and of all papers and proceedings conducted herein, and upon due deliberation, it is hereby

**ORDERED** that plaintiff's claims challenging the application to The Barden Corporation of the petition support requirement by the U.S. International Trade Commission ("ITC") with respect to a CDSOA disbursement for Fiscal Year 2004 be, and hereby are, dismissed as untimely according to the statute of limitations, 28 U.S.C. § 2636(i); it is further

**ORDERED** that plaintiff's remaining claims seeking a CDSOA disbursement for Fiscal Year 2004, and all claims seeking CDSOA disbursements for Fiscal Years 2005 and 2006 be, and hereby are, dismissed for failure to state a claim upon which relief can be granted; it is further

**ORDERED** that plaintiff's motion for judgment on the pleadings be, and hereby is, denied; it is further

**ORDERED** that all motions to dismiss, and all motions for judgments on the pleadings, are denied with respect to plaintiff's claims for CDSOA disbursements for Fiscal Years 2007, 2008, and 2009; it is further

**ORDERED** that the ITC and U.S. Customs and Border Protection, within thirty (30) days of the date of this Opinion and Order, shall file their respective administrative records in each of the actions consolidated in this case; and it is further

**Consol. Court No. 06-00435**                                                                                          **Page 20**

      **ORDERED** that plaintiff shall consult with the other parties to this action and file, within forty-five (45) days of the date of this Opinion and Order and in accordance with USCIT Rule 56.1, a proposed scheduling order addressing further proceedings in this litigation.

                                                                       /s/ Timothy C. Stanceu
                                                                        Timothy C. Stanceu
                                                                         Judge

Dated: June 15, 2012
        New York, New York